**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------X

**SEMYON GRINBLAT**, individually and on
behalf of all others similarly situated,

|  |  |
|---|---|
| Plaintiff, | **COMPLAINT** |
| -against- | **CASE NO.: 18-cv-6466** |
| **MEGA BURGERS IV CORP.**, **JOHN DOE 1-X**, persons yet unknown, **Limited Liability Companies/ Partnerships/Corporations 1-X**, entities yet unknown, | **JURY DEMAND** |
| Defendants. | |

-----------------------------------------------------------------------X

## CIVIL COMPLAINT

Michael Grinblat, Esq. (4159752), Law Offices of Michael Grinblat, Attorney for the

Plaintiff, 817 Broadway, Fourth Floor, New York, NY 10003, Tel: (347) 796-0712, Fax: (212)

202-5130, email: michael.grinblatesq@gmail.com.

The Plaintiff, Semyon Grinblat, as and for his complaint against the defendants,

respectfully brings before the Court the below allegations.

## STATEMENT OF THE PLAINTIFF'S CLAIMS

1. This is an action under Title III of the Americans with Disabilities Act of 1990 (the "ADA")
   to enjoin unlawful discrimination based on disability. The Plaintiff, SEMYON
   GRINBLAT, was discriminated against on the basis of disability and denied full and equal
   enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of
   a place of public accommodation owned, leased, or operated, by the defendants, MEGA

1

BURGERS IV CORP., JOHN DOE 1-X, persons yet unknown, Limited Liability Companies/Partnerships/Corporations 1-X, entities yet unknown.

2. The Plaintiff files this action for himself, and those similarly situated, complaining of the violations of Title III of the ADA. This action is brought under the ADA, 42 U.S.C. §12182, §12183 and §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. 2000a-3, §204 of the Civil Rights Act of 1964 – the ADA's Accessibility Guidelines, 28 CFR Part 36, subpart D, the 2004 ADA Accessibility Guidelines ("ADAAG") at 36 CFR Part 1191, appendices B and D, 2010 ADA Standards for Accessible Design (hereinafter "2010 Standards"), the Building Code of the State of New York, as well as New York State Civil Rights Law §40-c and §40-d, New York State Human Rights Law §296 and New York City Human Rights Laws [Administrative Code] §8-107.

3. The Plaintiff seeks compensatory and statutory damages, including, but not limited to, damages for personal injuries, declaratory and injunctive reliefs, attorney's fees, expert fees and costs against the defendants, as well as such other relief as the Court deems to be just and proper.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §451, §1331, §1337, §1343, §2201, §2202 and 42 U.S.C.A. §12181, *et seq.*, as it involves federal questions regarding the deprivation of the Plaintiff's rights under the ADA.

5. This Court has supplemental jurisdiction over the Plaintiff's allegations arising from the defendants' state law violations pursuant to 28 U.S.C. §1367(a).

6.  Venue is proper in this district pursuant to 28 U.S.C. §1391(b), because all events, or omissions, giving rise to this action, and alleged herein, occurred in this district. Venue is also proper in this district, because the defendants' property, a public accommodation, which is the subject of this action, is located in, and does business within, this judicial district.

**PARTIES**

7.  The Plaintiff, SEMYON GRINBLAT, is, and has been at all times material hereto, a resident of Monmouth County, New Jersey.

8.  The Plaintiff is disabled and is expressly authorized under §308 of the ADA, 42 U.S.C. §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. 2000a-3, §204 of the Civil Rights Act of 1964 – to bring this action.

9.  Upon information and belief, the defendant, MEGA BURGERS IV CORP., operates, and at all relevant times operated, a fast food restaurant under the name Burger King. The defendant operates the fast food restaurant, operated it and, at all relevant times, had control over and maintained an adjacent parking lot, which it designed, and/or constructed, and/or painted, and/or placed markings on, and/or altered, and/or operated, for the purpose of providing parking spaces for its customers, and is located at 91-18 Astoria Boulevard, Flushing, NY 11369 (hereinafter also referred to as the "Subject Facility"). The defendant is an American for-profit corporation organized under the laws of New York. The defendant is licensed to conduct business activities in New York State with the New York Department of State. Neither its registered agent's name, nor its registered agent's address, are provided on the New York Department of State's website, which shows that the New

York Department of State will mail process, if accepted on behalf of the entity, to the following address: Mega Burgers IV Corp., 7 Old Shore Road, Port Washington, NY 11050.

10. New York State law requires each corporation to have a designated registered agent, on whom service of process may be made. Under the New York Business Corporation Law, a "designating corporation is required to deliver to the department of state a certificate of amendment or change providing for the designation by the corporation of a new address and upon its failure to file such certificate, its authority to do business in this state should be suspended." BSC §306-A(a)(4). "Upon the failure of the designating corporation to file a certificate of amendment or change providing for the designation by the corporation of the new address after the filing of a certificate of resignation for receipt of process with the secretary of state, its authority to do business in this state shall be suspended… ." BSC §306-A (b) "In any case in which a corporation suspended pursuant to this section would be subject to the personal or other jurisdiction of the courts of this state …, process against such corporation may be served upon the secretary of state as its agent pursuant to this section. Such process may issue in any court in this state having jurisdiction of the subject matter." BSC §306-A(e)(1)

11. As the defendant, MEGA BURGERS IV CORP., provided neither the name, nor address of its registered agent, to the New York Department of State, its authority to do business in New York State is suspended pursuant to BSC §306-A. Nevertheless, service of process on it is effective, because it is served upon the Secretary of State. BSC §306-A(e)(2).

12. The defendant, MEGA BURGERS IV CORP., operates the Subject Facility, which is a fast food restaurant. It is a public accommodation within the meaning of Title III of the ADA,

4

42 U.S.C. §12181(7)(B) and 28 CFR §36.104 Place of public accommodation (2), New York State Human Rights Law §292(9) and New York City Human Rights Law, Admin. Code of the City of New York, §8-107(4).

13. Defendants JOHN DOE 1-X and Limited Liability Companies, Partnerships and Corporations 1-X are persons or entities yet unknown, but who or which might share liability as owners or tenants of the Subject Facility. At all relevant times they might have been, and currently might be, either owners, lessors, lessees, or operators of the commercial real estate lot in Queens County, on which the Subject Facility is located, and of the building in which it operates. Either one or several of them might be a landlord and lease its/their building and land, on which the parking lot of the Subject Facility is located, to the defendant, MEGA BURGERS IV CORP. The Plaintiff reserves the right to amend this Complaint to add such persons or entities as defendants when discovered during the course of this action.

14. Either one of the defendants, or all of them, at all relevant times, was an owner, and/or leased, and/or leased to, and/or managed, and/or had control over, and/or operated, and/or designed, and/or constructed, and/or built, and/or painted, and/or marked, and/or altered a parking lot adjacent to the fast food restaurant, which is operated by the defendant, MEGA BURGERS IV CORP., under the name Burger King. Either one of the defendants, or all of them together, simultaneously, or at different times, owned, and/or leased, and/or leased to, and/or designed, and/or constructed, and/or painted, and/or placed markings on, and/or operated, and/or built, and/or maintained, and/or altered that parking lot for the purpose of providing parking spaces for the fast food restaurant's customers. The fast food restaurant

and the adjacent parking lot comprise the Subject Facility and are located at 91-18 Astoria Boulevard, Flushing, NY 11369.

15. The defendants are jointly and severally liable for the design, construction, maintenance, control, alteration and/or operation of the parking lot adjacent to the fast food restaurant. It is the subject of this lawsuit and is a part of the Subject Facility.

## CLASS ACTION

16. The Plaintiff brings this suit for declaratory and injunctive relief and as a class action, pursuant to F.R.C.P. 23, on behalf of all those similarly situated who, as persons who must use wheelchairs by reason of various disabilities, and who use or desire to use the services and accommodations offered to the public by the defendants, are protected by, and are beneficiaries of, the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

17. The Plaintiff, complaining for himself, and all other similarly situated disabled residents in the City and State of New York, hereby alleges the following:

 a. The class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

 b. There are questions of law, or fact, common to the class, which predominate over any questions affecting only individual members;

 c. The claims or defenses of the representative parties are typical of the claims, or defenses, of the class;

 d. The representative parties will fairly and adequately protect the interests of the class; and

e.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

18. The claims of the Plaintiff are typical of those of the class. The class, similarly to the Plaintiff, was also not able to have access to the Subject Facility because of the architectural barriers.

19. The Plaintiff will fairly and adequately represent and protect the interests of the members of the class, because, in accordance with Fed. R. Civ. P. 23(g), he has retained, and is represented by, an experienced counsel, who has done the work in identifying and investigating potential claims in the action, who knows the applicable law, who may commit resources to representing the class, who would represent the Plaintiff in complex class action litigation, and because the Plaintiff has no interests antagonistic to the members of the class.

20. A class action may be maintained under Fed. R. Civ. P. 23(a), which is satisfied, as prosecuting separate actions by, or against, individual class members would create a risk of adjudications with respect to them that, as a practical matter, would be dispositive of the interests of the other members, not parties to the individual adjudications, or would substantially impair, or impede, their ability to protect their interests. That risk includes, but is not limited to, the defendants removing the architectural barriers without either compensating members of the class, or paying them statutory damages, for discrimination, discomfort, emotional distress, inconvenience and humiliation, which the class members have suffered as a result of the defendants' actions, which violated the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

21. Class certification of the claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(2), because the defendants had acted, or refused to act, on grounds that apply generally to the class, so that final injunctive relief, or corresponding declaratory relief, is appropriate respecting the class as a whole.

22. Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3), because questions of law, or fact, common to class members, clearly predominate over any questions affecting only individual class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

23. Judicial economy will be served by maintenance of this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people who use wheelchairs in the Eastern District of New York.

24. References to the Plaintiff shall be deemed to include the named Plaintiff and each member of the class, unless otherwise indicated.

## STATUTORY SCHEME

25. On July 26, 1990, United States Congress enacted the ADA, establishing important civil rights for individuals with disabilities, including the right to full and equal enjoyment of goods, services, facilities, privileges and access to places of public accommodation.

26. Congress made the following findings:

   a. Some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;
   b. Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

    c. Discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting and access to public services;

    d. Individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and regulation to lesser services, programs, activities, benefits, jobs or other opportunities; and

    e. The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. §12101(a)(1)-(3), (5) and (8)

27. Furthermore, Congress also explicitly stated that the ADA had to:

    a. Provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

    b. Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

    c. Invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. §12101(b)(1)(2) and (4)

28. Furthermore, pursuant to 42 U.S.C. §12182 and 28 CFR §36.201(a), the congressional intent was to ensure that no place of public accommodation may discriminate against an individual on the basis of such individual's disability, with regard to the full and equal

enjoyment of the goods, services, facilities, privileges, advantages, or accommodations at that place of public accommodation.

29. Congress provided commercial businesses at least 18 months from enactment to make their facilities compliant with the regulations in the ADA. The effective date of Title III of the ADA was January 26, 1992, or January 26, 1993, if defendant has ten (10), or fewer, employees and gross receipts of $500,000, or less. 42 U.S.C. §12183; 28 CFR §36.508(a).

30. The 2000 United States census indicates that in the civilian non-institutionalized population more than 49.7 million people in the United States have a disability. The census also indicates that more than 1.39 million New Yorkers have a mobility disability.

31. The ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws recognize individuals with disabilities as a protected class. 42 U.S.C. §12182(a)

32. It is unlawful for a private entity, which owns, leases, leases to, or operates a place of public accommodation, to discriminate against an individual with a disability. 42 U.S.C. §12182(b)(1)(A), 28 CFR §36.201(a) and (b)

33. Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA, known as the ADAAG, 28 CFR §36, under which it may obtain civil penalties of up to $110,000 for the first violation and $150,000 for any subsequent violation.

34. The landlord, who owns the building that houses a place of public accommodation and the tenant, who owns, or operates the place of public accommodation, have a non-delegable duty to comply with the ADA, the New York State Civil Rights Laws, the New York State

Human Rights Laws and the New York City Human Rights Laws. 28 CFR §36.201(a) and (b)

35. The Subject Facility affects interstate commerce within the meaning of the ADA. 42 U.S.C. §12181(7)(B) and 28 CFR §36.104 Place of public accommodation (2)

36. Regardless of any contractual provisions stating otherwise, the landlord and owner of the property, which houses the public accommodation, cannot escape liability for the tenant's failure to comply with the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws. 28 CFR §36.201.

37. Discriminatory intent is not required to establish liability under the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

38. One type of disability discrimination is the failure of an owner, or an operator, of a public accommodation to remove those architectural barriers, removal of which is readily achievable.

> A public accommodation shall remove architectural barriers in existing facilities, including communication barriers that are structural in nature, where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense.

28 CFR §36.304

39. If an individual with a disability is dissuaded from entering, or receiving services of a place of public accommodation, because of the existence of an architectural barrier, the landlord and tenant will be guilty of discrimination on the basis of disability.

40. The defendants must remove all barriers, removal of which is readily achievable, that deny an individual with a disability the opportunity to participate in, or benefit from, services, or accommodations, on the basis of their disability. 28 CFR §36.304

41. Removal of the architectural barriers is readily achievable by the defendants.

42. The Plaintiff is informed and believes, and therefore alleges, that the Subject Facility has begun operations, and/or undergone substantial remodeling, repairs and/or alterations, since January 26, 1990, and/or has sufficient income to make readily achievable accessibility modifications.

## FACTUAL ALLEGATIONS AND FIRST CAUSE OF ACTION

### Violations of the ADA

43. The Plaintiff, who was born in 1949, is an elderly man aged beyond his 69 years. He suffers from debilitating diseases and was diagnosed with a neurological condition, which affects his walking. The Plaintiff's treating neurologist determined that he has gait dysfunction, the causes of which include peripheral neuropathy due to diabetes mellitus, chronic right basilar ganglia lacunar infarct and cerebellar ataxia. The Plaintiff's treating neurologist also determined that he has essential tremor. Furthermore, the Plaintiff has decreased vision due to glaucoma and is blind in the right eye. The Plaintiff's gait is unsteady and he falls when he walks short distances. His treating neurologist prescribed him a wheelchair and a handicapped parking placard. The Plaintiff obtained the wheelchair and uses it regularly. The New Jersey Motor Vehicle Commission issued him a disabled person parking placard together with a handicapped identification card. The handicapped placard can be used in any car, in which the Plaintiff is travelling. The Plaintiff relies on his wheelchair and parks

appropriately in handicapped accessible parking spaces. He also needs appropriate and statutorily mandated space next to that car, so that he may transfer from the car to the wheelchair. The Plaintiff is disabled under the statute, which in pertinent part states that

> *disability* means, with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of such individual… . The phrase *major life activities* means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.

28 CFR §36.104

44. The Plaintiff's adult son visits the Plaintiff, manages his care and takes him to places the Plaintiff wants to visit, including stores, restaurants, parks, doctors and medical facilities in New Jersey, where he currently resides, and New York, where he previously resided for decades and where his son and friends still reside.

45. In September 2018, the Plaintiff attempted to enter the defendants' Subject Facility to enjoy full and equal access to, and the benefits of, all the accommodations and services offered at the defendants' property.

46. The Subject Facility is a fast food restaurant and sells food and beverages. Adjacent to it is a parking lot, which comprises part of the Subject Facility, as it is provided by the defendants for their customers. The defendants own the fast food restaurant and the parking lot, and/or lease, and/or operate it, and/or designed it, and/or painted it, and/or marked it, and/or exercise control over it, and/or maintain it, and/or altered it since 1992.

47. The Subject Facility is a public accommodation within the meaning of Title III of the ADA, 42 U.S.C. §12181(7)(B) and 28 CFR §36.104 Place of public accommodation (2), New

York State Human Rights Law §292(9) and New York City Human Rights Law, Admin. Code of the City of New York, §8-107(4).

48. There is one designated handicapped parking space at the Subject Facility.

49. The Plaintiff's son drove to the Subject Facility with the Plaintiff and parked his vehicle in the handicapped parking space. It was impermissibly steep.

50. When the Plaintiff's son placed the wheelchair next to the car's door, in the access aisle, on the right side of the car, to enable the Plaintiff's transfer from the rear of the car to the wheelchair, it rolled backwards.

51. The Plaintiff then had great difficulty riding to the Subject Facility, because the designated and painted route, which leads from the handicapped parking space to the restaurant's entrance, is also impermissibly steep. That route crosses the traffic lanes. The cars were entering and exiting the parking lot in these lanes while the Plaintiff was crossing them in his wheelchair, which further endangered his safety. The Plaintiff was not able to rotate the wheels of his wheelchair when he attempted to ride upwards on what is supposed to be an accessible route, because it was too difficult. He required assistance of his son to push him up. It was very difficult for the Plaintiff's son to push the Plaintiff up. Furthermore, there is a curb at the top, which made it impossible for the Plaintiff's son to push the wheelchair with the Plaintiff all the way up. The Plaintiff had to get off the wheelchair on the steep and uneven surface and walk up. He barely avoided falling as he did that. His son then carried the wheelchair up in his hands. The Plaintiff then sat down in the wheelchair and proceeded towards the entrance of the restaurant.

52. The Plaintiff then was not able to open the Subject Facility's right door, to which the accessible route leads, because its spring's tension is impermissibly high. It was not

possible for the Plaintiff's son to open and hold the door for the Plaintiff, because of the tension.

53. The Plaintiff then proceeded around the front of the restaurant to the left door. He was not able to open that door either, because its spring's tension was also too high. The Plaintiff's son was also not able to hold the door open for the Plaintiff to enter, as it was not possible to simultaneously hold the door open for the Plaintiff and push him through. The restaurant's employee came to the door to assist the Plaintiff and his son. The assistance of two able-bodied individuals was required to let the Plaintiff enter the Subject Facility.

54. The Plaintiff's inconveniences continued when he had difficulty paying at the counter for the food he was purchasing. There is no waiting service at the Subject Facility and customers have to pay at the counter. The Plaintiff was not able to extend his knees and feet on the wheelchair rests under the counter. He was not even able to extend his toes under it, as there was no opening at all.

55. On the way out of the restaurant, the Plaintiff was not able to open its door, because it was very difficult to open. The tension of its spring was too high and he, once again, required the assistance of two able-bodied individuals to exit the Subject Facility.

56. The Plaintiff then found it impossible to ride to the car in the accessible route, because part of it was very steep and had a curb. He had to get off the wheelchair and walk over the curb to the steep and uneven surface and then sit down on the wheelchair. The Plaintiff barely avoided falling as he did that. The Plaintiff was then not able to control the wheelchair himself to ride down the route and his son helped him by slowly walking backward down the route to the car all the while holding the Plaintiff's wheelchair, with the Plaintiff in it, in front of him.

57. The Plaintiff's difficulties and inconveniences did not stop there. He then had difficulty transferring from the wheelchair back to the car, as the ground surface of the handicapped parking space and the access aisle was steep. Once again, he barely avoided falling.

58. The Subject Facility's parking lot was either designed by people who did not have the Plaintiff and his needs, and needs of others similarly situated, in mind, to accommodate him and facilitate his access to the Subject Facility, or worse.

59. Frustrated, disappointed and humiliated, the Plaintiff left the Subject Facility's parking lot.

60. The Subject Facility is located not far from the Plaintiff's son's home, in East Elmhurst, which is designated as Flushing by the United States Postal Service. The Plaintiff enjoys visiting that vibrant neighborhood and comes there often.

61. The defendants' Subject Facility is conveniently located and the Plaintiff intends to visit it, purchase the food it sells, which he likes, and enjoy its services, as soon as the architectural barriers are removed.

62. The Plaintiff had difficulties gaining access to the Subject Facility and paying for the food, because of the unlawful architectural barriers, and therefore suffered an injury in fact.

63. Since at least September 2018, the defendants have engaged in unlawful practices in violation of the ADA, the New York State Civil Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

64. The Plaintiff has difficulties visiting the Subject Facility, continues to be discriminated against due to the architectural barriers, which remain at the Subject Facility, all in violation of the ADA, the New York State Civil Rights Laws, and the New York State and the New York City Human Rights Laws. The barriers to access the Subject Facility have

16

effectively denied the Plaintiff ability to visit the property and have caused him personal injuries, including emotional distress, embarrassment and frustration.

65. Because the Subject Facility is a public accommodation, the defendants are responsible for complying with the ADA. 28 CFR §36.304

66. The numerous architectural barriers to access the Subject Facility have endangered the Plaintiff's safety.

67. The defendants' Subject Facility violates 42 U.S.C. §12181, §12182, §12183, §12204 of the ADA, 28 CFR §36.302 and §36.304.

68. The Department of Justice ("DOJ") published revised regulations for Title III of the ADA in the Federal Register on September 15, 2010. "These regulations adopted revised, enforceable accessibility standards called the 2010 ADA Standards for Accessible Design, '2010 Standards'". (See, 2010 Standards, Overview) These standards "set minimum requirements – both scoping and technical – for newly designed and constructed, or altered … public accommodations, and commercial facilities to be readily accessible to and usable by individuals with disabilities." Id. The DOJ provided that document in one publication and it includes the 2010 Standards for public accommodations and commercial facilities, which consist of the Title III regulations at 28 CFR Part 36, subpart D, and the 2004 ADAAG at 36 CFR Part 1191, appendices B and D.

69. The defendants' Subject Facility is discriminating against the Plaintiff, and others similarly situated, by denying him access to, as well as full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building and its parking lot, by means of the architectural barriers, the existence of which is in violation of the ADA, including, but not limited to, those listed below.

70. "Parking space identification signs shall include the International Symbol of Accessibility complying with 703.7.2.1. Signs identifying van parking spaces shall contain the designation 'van accessible.' Signs shall be 60 inches (1525 mm) minimum above the finish floor or ground surface measured to the bottom of the sign." 2010 Standards §502.6. The defendants disregarded the regulation completely and failed to install the required van identification sign or any sign above the finish floor, designating a handicapped parking space, in their parking lot.

71. "Parking spaces and access aisles serving them shall comply with 302. Access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. EXCEPTION: Slopes not steeper than 1:48 shall be permitted." 2010 Standards §502.4. Thus, the maximum permissible slope must not be steeper than 2.08%. The defendants violated that rule. The handicapped parking space, in which the Plaintiff's car was parked, has a cross slope as steep as 4.7%, which is equivalent to 1:21.28. The access aisle has a 3.5% slope, which is equivalent to 1:28.57. The cross slope of the access aisle is 3.75%, which is equivalent to 1:26.66.

72. "Access aisles are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles. The exception allows sufficient slope for drainage." 2010 Standards §Advisory 502.4. The surface of the access aisle is impermissibly steep. It has a 3.5% slope, which is equivalent to 1:28.57. The cross slope of the access aisle is 3.75%, which is equivalent to 1:26.66. As a result, it was difficult for the Plaintiff to transfer from the vehicle to the wheelchair and the other way around. He was barely able to stand up and nearly fell. The wheelchair rolled backwards on the steep

surface, further making it difficult for the Plaintiff to transfer to it and control its movement once he was on it.

73. "Walking surfaces that are a part of an accessible route shall comply with 403." 2010 Standards §403.1. "The running slope of walking surfaces shall not be steeper than 1:20. The cross slope of walking surfaces shall not be steeper than 1:48." 2010 Standards §403.3 The defendants grossly violated that rule. The running slope of the walking surface on the designated and painted accessible route is as steep as 19.45%, which is equivalent to 1:5.14. As a result, the Plaintiff was not able to rotate the wheels of his wheelchair and had to rely on his son's assistance to travel upwards on the accessible route. A portion of the route with the slope has a curb. It was not possible for the Plaintiff's son to push the wheelchair over the curb on the steep surface of 19.45% without the almost certain risk of the Plaintiff falling backwards. The Plaintiff had to get up from the wheelchair on the very steep and uneven surface, wait for his son to carry the wheelchair up in his hands over the curb, then walk over the curb and then sit down on the wheelchair again. The Plaintiff was greatly distressed as a result.

74. "Floor and ground surfaces shall be stable, firm, and slip resistant and shall comply with 302." 2010 Standards §302.1. The ground surface at the Subject Facility's parking lot is impermissibly steep. In addition, the pavement of the accessible route is cracked, damaged and uneven.

75. "Changes in level greater than ½ inch (13 mm) high shall be ramped, and shall comply with 405 or 406." 2010 Standards §303.4. The defendants grossly violated that rule. Their accessible route has a change in level greater than 15 inches. The defendants did not install the required ramp.

76. "Accessible routes shall consist of one or more of the following components: walking surfaces with a running slope not steeper than 1:20, doorways, ramps, curb ramps excluding the flared sides, elevators, and platform lifts." 2010 Standards §402.2. "The *running slope* of walking surfaces shall not be steeper than 1:20. The *cross slope* of walking surfaces shall not be steeper than 1:48." 2010 Standards §403.3. The defendants grossly disregarded these regulations. The running slope of the walking surface on the accessible route is as steep as 19.45%, which is equivalent to 1:5.14. There is no ramp.

77. "*Ramp* runs shall have a *running slope* not steeper than 1:12." "EXCEPTION: In existing *sites*, *buildings*, and *facilities*, *ramps* shall be permitted to have *running slopes* steeper than 1:12 complying with Table 405.2 where such slopes are necessary due to *space* limitations." "A slope steeper than 1:8 is prohibited." 2010 Standards §405.2 The defendants grossly violated the regulation. There is no ramp at the Subject Facility. However, even had there been a ramp on the accessible route, its slope would not be acceptable under the 2010 ADA Standards even for a rise of three inches allowed under the exception. The rise on the Subject Facility's accessible route is greater than 15 inches and has a slope as steep as 19.45%, which is equivalent to 1:5.14, which is steeper than the expressly prohibited slope of 1:8 under 2010 Standards §405.2.

78. "Ramp runs with a rise greater than 6 inches (150 mm) shall have handrails complying with 505." 2010 Standards §405.8 The defendants grossly violated that regulation. The rise on the accessible route is greater than 15 inches. There is no required ramp and no handrails.

79. "Edge protection complying with 405.9.1 or 405.9.2 shall be provided on each side of *ramp* runs and at each side of *ramp* landings." 2010 Standards §405.9. The defendants

disregarded that rule and did not install a required ramp. Because there is no ramp, there is also no edge protection on it. It is absent together with the required handrails.

80. "Accessible routes must connect parking spaces to accessible entrances. In parking facilities where the accessible route must cross vehicular traffic lanes, marked crossings enhance pedestrian safety, particularly for people using wheelchairs and other mobility aids. Where possible, it is preferable that the accessible route not pass behind parked vehicles." Advisory 2010 Standards §502.3. On the defendants' parking lot, the accessible route crosses the traffic lanes. The cars were entering and leaving the parking lot while the Plaintiff was crossing the traffic lanes in his wheelchair. Although it was possible to design the parking lot to make it compliant with the ADA and in such a way that the accessible route does not cross the traffic lanes, the defendants chose not to do so. As a result, the Plaintiff was not able to ride safely from the car to the restaurant's entrance and his safety was endangered.

81. "Fire doors shall have a minimum opening force allowable by the appropriate administrative authority. The force for pushing or pulling open a door or gate other than fire doors shall be as follows: 1. Interior hinged doors and gates: 5 pounds (22.2 N) maximum." 2010 Standards §404.2.9 The defendants grossly violated that regulation. There are several hinged doors at the Subject Facility. The force required for pushing or pulling open the doors ranges between 12 lbs – 15 lbs. As a result, the Plaintiff was not able to open the doors to either enter, or exit the Subject Facility.

82. "A portion of the counter surface that is 30 inches (760 mm) long minimum and 36 inches (915 mm) high maximum shall be provided. Knee and toe space complying with 306 shall be provided under the counter. A clear floor or ground space complying with 305 shall be

positioned for a forward approach to the counter." 2010 Standards §904.4.2. The defendants violated that rule. Knee and toe spaces were not provided under the counter. As a result, the Plaintiff was not able to extend his feet, or toes, under it in order to reach the cashier and had to rely on assistance.

83. The individual Plaintiff, and all others similarly situated, will continue to suffer discrimination and injury without the immediate relief provided by the ADA, as requested herein. In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the defendant's Subject Facility in order to measure and photograph architectural barriers that are in violation of the ADA to determine all of the areas of non-compliance with the law.

84. The defendants have failed to remove architectural barriers to accessibility to the Subject Facility in violation of 42 U.S.C. §12182(b)(2)(A)(iv).

85. Upon information and belief, since 1992 the defendants' Subject Facility has undergone alterations to the areas, which affect, or could affect, access to or usability of, its place of public accommodation.

86. The Subject Facility has not been designed, constructed, altered, or maintained in compliance with the accessibility standards of Title III of the ADA.

87. The defendants have violated their statutory obligation to ensure that their policies, practices and procedures address compliance with the 2010 Standards in that they did not make reasonable accommodations for the individual Plaintiff, and all others similarly situated, and also violated their obligation to remove architectural barriers in order to let disabled individuals enjoy goods and services provided by the public accommodation under their control, thus discriminating against them.

88. To date, the architectural barriers, the removal of which was, and is, readily achievable, and other violations of the ADA, still exist at the Subject Facility and have not been remedied, or altered, in such a way as to effectuate compliance with the provisions of the ADA.

89. Pursuant to the ADA, 42 U.S.C. §12101, §12182 and 28 CFR §36.304, the defendants were required to make the Subject Facility accessible to persons with disabilities, and should have removed architectural barriers by January 26, 1992. To date, the defendants have failed to comply with that mandate.

90. The defendants' failure to remove the barriers to access constitutes a pattern and practice of intentional disability discrimination and is subject to enforcement under 42 U.S.C. §12188 and 28 CFR §503.

91. It was not structurally impracticable for the defendants to make the Subject Facility accessible.

92. Removal of all architectural barriers existing at the Subject Facility was, and is, readily achievable by the defendants.

93. The defendants may, should and are required to make reasonable accommodations at the Subject Facility and their making them would be readily achievable.

94. Accommodations to the Plaintiff, and other persons similarly situated, and removal of architectural barriers at the Subject Facility by the defendants, are readily achievable, would not impose an undue hardship on them and would not fundamentally alter the nature of their program, activity, or nature of the business.

95. The Plaintiff has a realistic, credible, existing and continuing threat of discrimination from the defendants' non-compliance with the ADA in connection with the Subject Facility.

96. The defendants' failure to make their Subject Facility accessible denied the Plaintiff and others, similarly situated, an equal opportunity to participate in, or to benefit from, services, or accommodations, on the basis of their disability.

97. The effect of the practices complained of has been to deprive the Plaintiff, and all other similarly situated individuals, of the full and equal enjoyment of the Subject Facility and to otherwise adversely affect his status as a member of the public interested in accessing the place of public accommodation owned, leased, leased to, constructed, maintained and/or operated by the defendants.

98. The defendants' Subject Facility is not accessible to, or readily usable by, individuals with disabilities.

99. Pursuant to 42 U.S.C. §12188, this Court was vested with the authority to grant the Plaintiff injunctive relief, including an order to alter the Subject Facility, to make it accessible to, and useable by, the Plaintiff, and other similarly situated individuals with disabilities, to the extent required by the ADA, as well as close the Subject Facility until the required modifications are completed.

100.    The defendants' flagrant disregard for the ADA, and the New York laws, which obligate them to make all readily achievable accommodations and modifications to remove architectural barriers to access and use of their Subject Facility is legally inexcusable. Allowing the defendants to deleteriously detrimentally prolong their practices would encourage them to continue to blatantly disregard the ADA, the New York State Civil Laws, the New York State Human Rights Laws and the New York City Human Rights Laws, and discriminate against the Plaintiff, and other similarly situated individuals.

101.    The inexcusability of the defendants' actions is exacerbated by the fact that over 25

years have passed since the effective date of Title III of the ADA. During that time period

they operated at a profit, should have accumulated sufficient funds to make alterations and

had numerous opportunities to remove the architectural barriers and end discrimination,

but intentionally chose not to do so. By intentionally not removing the architectural

barriers, which barred the Plaintiff's access, inconvenienced and embarrassed him,

humiliated him and caused emotional distress to him, and others similarly situated, the

defendants gave a crystal-clear message to disabled customers that their patronage is

neither needed, desired, welcomed, or wanted.


## SECOND CAUSE OF ACTION

### Violations of the New York State Human Rights Laws

102.    The Plaintiff re-alleges, and incorporates, by this reference, all allegations set forth

in this complaint as if fully set forth herein.

103.    The New York State Human Rights Law, in relevant part, provides the following:

> It shall be an unlawful discriminatory practice for any
> person, being the owner, lessee, proprietor, manager,
> superintendent, agent or employee of any place of public
> accommodation … because of the … disability … of any
> person, directly or indirectly, to refuse, withhold from or
> deny to such person any of the accommodations, advantages,
> facilities or privileges thereof … to the effect that any of the
> accommodations, advantages, facilities and privileges of any
> such place shall be refused, withheld from or denied to any
> person on account of … disability … .

NYS Executive Law §296(2)(a)

104.    The defendants' Subject Facility is a place of public accommodation as defined in

New York State Human Rights Law §292(9).

25

105.     The defendants have further violated the New York State Human Rights Law by being in violation of the rights provided under the ADA.

106.     The defendants are in violation of the New York State Human Rights Law by denying the Plaintiff, and others similarly situated, full and safe access to all of the benefits, accommodations and services of the Subject Facility.

107.     The defendants do not provide the Plaintiff, and others similarly situated, with equal opportunity to use their public accommodation.

108.     The defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of Executive Law §296(2)(c)(iii).

109.     As a direct and proximate result of the defendants' unlawful discrimination, which is in violation of the Executive Law, the Plaintiff has suffered, and continues to suffer, personal injuries, which include emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety.

110.     The defendants have not provided the Plaintiff, and others similarly situated, with evenhanded treatment in violation of New York State Human Rights Law §296.

111.     The defendants' direct, or indirect, unequal treatment of the Plaintiff, and others similarly situated, was demonstrated when he was discriminated against.

112.     The defendants have, because of the Plaintiff's disability, directly, or indirectly, refused, withheld from, or denied him the accommodations, advantages, facilities, or privileges of their public accommodation.

113.     The defendants have demonstrated that the patronage, or custom, of the Plaintiff, and other similarly situated individuals, is unwelcome, unwanted, undesirable, unacceptable and objectionable.

114.     Pursuant to the New York State Human Rights Laws, the defendants, and their agents, discriminated against the Plaintiff.

115.     As a direct and proximate result of the defendants' unlawful discrimination, which was, and is, in violation of the New York State Human Rights laws, the Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, stress, embarrassment, insomnia, anxiety, loss of self-esteem and self-confidence, together with emotional pain and suffering.

116.     The Plaintiff requests compensatory damages in the amount of $1,000 under the New York State Human Rights Law, NY CLS Exec §297(9).

### **THIRD CAUSE OF ACTION**

### **Violations of the New York State Civil Rights Laws**

117.     The Plaintiff re-alleges, and incorporates by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

118.     The defendants have violated the Plaintiff's civil rights on the basis of his disability.

119.     Consequently, the Plaintiff is entitled to recover the penalty prescribed by Civil Rights Law §40-c and §40-d, in the amount of $500 for each violation from each defendant.

120.     Pursuant to the New York Civil Rights law, §40-d, the defendants are guilty of a class A misdemeanor.

121.     Notice of this action is being served upon the attorney general, as required by New York Civil Rights Law, §40-d, in accordance with the statute.

## FOURTH CAUSE OF ACTION

### Violations of the New York City Human Rights Laws

122.    The Plaintiff re-alleges, and incorporates by this reference, all the allegations set

forth in this complaint, as if fully set forth herein.

123.    The New York City Human Rights Law, in a relevant part, provides the below.

> it shall be an unlawful discriminatory practice for any person
> who is the owner, franchisor, franchisee, lessor, lessee,
> proprietor, manager, superintendent, agent or employee of
> any place or provider of public accommodation:
>> 1. Because of any person's actual or perceived …
>> disability …, directly or indirectly:
>>> (a) to refuse, withhold from or deny to such
>>> person the full and equal enjoyment, on equal
>>> terms and conditions, of any of the
>>> accommodations, advantages, services,
>>> facilities or privileges of the place or provider
>>> of public accommodation;

NYC Admin. Code §8-107(4)

124.    The defendants have not reasonably accommodated the Plaintiff, and other disabled

individuals, in violation of New York City's Administrative Code §8-102(4), (16), (17),

(18), §8-107(4) and §8-107(15).

125.    In violation of the New York City Administrative Code, the defendants have

unlawfully discriminated against the Plaintiff and all others similarly situated.

126.    Reasonable accommodations and modifications are necessary to enable the

Plaintiff, and all others similarly situated, the ability to enjoy non-restricted access and use

of the defendants' Subject Facility.

127.    In violation of the New York City Administrative Code the owner, operator, lessee,

proprietor, manager, agent and/or employees of the defendants' Subject Facility have,

because of the actual, or perceived, disability of the Plaintiff directly, or indirectly, refused, withheld from, and denied him the accommodations, advantages, facilities, or privileges thereof.

128.    In violation of the New York City Administrative Code, on the basis of the Plaintiff's disability, the defendants have demonstrated that the patronage, or custom, of the Plaintiff, and all others similarly situated, is unwelcome, objectionable and not acceptable.

129.    The defendants are in violation of the New York City Human Rights Law by denying the Plaintiff full and safe access to all of the benefits, accommodations and services of the Subject Facility.

130.    Pursuant to New York City Human Rights Law §8-502(c), notice of this action is being served upon the New York City Commission on Human Rights in accordance with the statute.

131.    As a direct and proximate result of the defendants' disability discrimination, in violation of the New York City Human Rights Laws, the Plaintiff has suffered, and continues to suffer, personal injuries, including severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, stress, embarrassment, anxiety, insomnia, loss of self-esteem and self-confidence, emotional pain and suffering.

132.    The Plaintiff requests compensatory damages in the amount of $1,000 under the New York City Human Rights Law, NYC Admin. Code §8-125.

## ATTORNEY'S FEES AND COSTS

133.     The Plaintiff had to retain the undersigned counsel for the filing and prosecution of

this action. The Plaintiff is entitled to have his reasonable attorney's fees, including

litigation expenses, and costs, including expert fees, paid by the defendants, pursuant to

the ADA, 28 CFR §36.505 and New York Executive Law §297(10). Furthermore, pursuant

to the New York City Human Rights Law, the Court may award the prevailing party

reasonable attorney's fees. Under that law's definition "prevailing" includes a Plaintiff,

whose commencement of litigation has acted as a catalyst to effect policy change on the

part of the defendant. NYCHRL, in pertinent part, states the below.

> In any civil action commenced pursuant to this section, the
> Court, in its discretion, may award the prevailing party
> reasonable attorney's fees, expert fees and other costs. For
> the purposes of this subdivision, the term "prevailing"
> includes a Plaintiff whose commencement of litigation has
> acted as a catalyst to effect policy change on the part of the
> defendant, regardless of whether that change has been
> implemented voluntarily, as a result of a settlement or as a
> result of a judgment in such Plaintiff's favor. The Court shall
> apply the hourly rate charged by attorneys of similar skill
> and experience litigating similar cases in New York County
> when it chooses to factor the hourly rate into the attorney's
> fee award.

NYC Admin. Code §8-502(g)

## MONETARY DAMAGE

134.     The Plaintiff requests compensatory damages in the amount of $1,000 under the

New York State Human Rights Law, NY CLS Exec §297(9) and the New York City

Human Rights Law, NYC Admin. Code §8-125.

> In calculating compensatory damages under the NYSHRL
> and the NYCHRL, a Court in the Southern District of New
> York just a few months ago found relevant the fact that '[t]he

> New York City Human Rights Commission has deemed awards of $1,000 to be sufficient in cases where complainants did not establish any particular damage 'other than what a decent and reasonable individual would suffer when faced with such ignorant behavior.'

<u>Shalto v. Bay of Bengal Kabob Corp.</u>, 2013 WL 867429, (quoting and adapting <u>Kreisler</u>, 2012 WL 3961304, at *14)

135.     The Plaintiff requests statutory monetary damages in the sum of $500 from each defendant to compensate him for their violation of New York Civil Rights Law §40-c and §40-d.

> New York Civil Rights Law §40-c holds that *any person* [emphasis added] who shall violate any of the provisions of New York Civil Rights Law §40-d 'shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any Court of competent jurisdiction in the county in which the defendant shall reside. … [T]his Court has the authority to order Defendant to pay Plaintiff the $500 in statutory damages contemplated by the New York Civil Rights Law for the disability discrimination Plaintiff has suffered… .

<u>Shalto v. Bay of Bengal Kabob Corp.</u>, 2013 WL 867429

136.     The reason the Plaintiff requests $500 from each defendant, and not a lower amount envisioned by the statutes, is due to the high number and extent of the violations, which were alleged in detail in this complaint. Furthermore, the number of violations may be even greater, and they may be even more extensive, than those alleged here and it is likely that they will be revealed upon inspection of the Subject Facility by an expert.

## INJUNCTIVE RELIEF

137.    Pursuant to 42 U.S.C. §12188 this Court is vested with the authority to grant the Plaintiff injunctive relief, including an order to alter the Subject Facility to make it readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA, the New York State Civil Rights Law, the New York State Human Rights Law, the New York City Human Rights Law and close the Subject Facility until the requisite modifications are completed.

138.    The Plaintiff requests the Court to issue a permanent injunction enjoining the defendants from disability discrimination.

139.    The Plaintiff requests the Court to issue a permanent injunction and order the defendants to alter their Subject Facility to make it readily accessible to and usable by individuals with disabilities. To achieve that, the Plaintiff requests the Court to adapt relief ordered in Shariff v. Alsaydi, 2013 WL 4432218. The Plaintiff requests the Court to order the defendants to prepare architectural plans remedying the violations of the 2010 Standards and to provide the Plaintiff's counsel with those plans for review within 60 days of the Court's order. The Plaintiff also requests that the injunction provide him with 30 days to file a motion seeking relief should the defendants' proposed architectural plans be inadequate to remedy the 2010 Standards violations specified in this complaint. The Plaintiff further requests that the injunction requires the defendants to implement the architectural plans and remedy the violations within 60 days of either the Plaintiff's agreement, or a ruling by the Court stating that the plans are adequate.

140.    The Plaintiff requests the Court to issue a permanent injunction requiring the defendants to make all necessary modifications to the defendants' policies, practices and

procedures, so that the Plaintiff, and other persons similarly situated, would not be subject to further unlawful discrimination.

141.    Injunctive relief is also necessary to order the defendants to provide auxiliary aid, or service, and/or alternative methods, to allow the Plaintiff, and others similarly situated, to use the place of public accommodation in accordance with Title III of the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

## DECLARATORY RELIEF

142.    The Plaintiff is entitled to a declaratory judgment concerning the violations of the ADA, the New York State and the New York City laws committed by the defendants specifying the rights of the Plaintiff, and other persons similarly situated, as to the removal of the architectural barriers from the defendants' Subject Facility by the defendants and as to their policies, practices, procedures, facilities, goods and services.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff hereby respectfully requests judgment against the defendants and that this Court grants the following relief:

A.    Certifies this case as a class action;

B.    Grants a permanent injunction

    i.)  Enjoining the defendants, its officers, management personnel, employees, agents, successors and assigns from engaging in discrimination based on disability;

      ii.) Requiring the defendants to alter their Subject Facility to make it readily accessible to, and usable for, individuals with disabilities;

      iii.) Compelling the defendants to make all necessary modifications to their policies, practices and procedures, so that the Plaintiff would not be subject to further discrimination;

      iv.) Ordering the defendants to provide auxiliary aids and services, as well as to modify their policies, or procedures, or provide an alternative method, so that the Plaintiff would be able to obtain the full and equal enjoyment of the Subject Facility owned, operated, maintained, or leased, by the defendants, in accordance with Title III of the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws; and

      v.) Ordering the defendants to make the Subject Facility readily accessible to and usable by individuals with disabilities.

C.     Enters declaratory judgment specifying the defendants' violations of the ADA, the New York State Civil Laws, the New York State Human Rights Laws and the New York City Human Right Laws and declares the rights of the Plaintiff, and other persons similarly situated, as to the defendants' policies, procedures, facilities, goods and services offered to the public;

D.     Enters declaratory judgment specifying that the Subject Facility owned, operated, leased, controlled, maintained and/or administered by the defendants violates the ADA, the New York State Civil Rights Law, the New York State Human Rights Law and the New York City Human Rights Law;

E.     Enters an order requiring the defendants to alter their facilities and amenities to make them accessible to, and usable by, individuals with disabilities to the full extent required by Title III of the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws;

F.     Holds the defendants liable for compensatory damages in the amount of $1,000 under the New York State Human Rights Law and the New York City Human Rights Law.

G.     Holds each of the defendants liable for $500 in statutory monetary damages for each violation and awards that sum to the Plaintiff pursuant to New York State Civil Rights Laws §40-c and §40-d;

H.     Finds the defendants guilty of class A misdemeanor pursuant to New York State Civil Rights Law §40-d;

I.     Retains its jurisdiction over the defendants until their unlawful practices, acts and omissions no longer exist;

J.     Finds that the Plaintiff is a prevailing party in this litigation and awards attorney's fees, expert fees, costs and expenses, together with such other and further relief at law, or in equity, to which the Plaintiff, and other persons similarly situated, may be entitled; and

K.     Awards such other and further relief as it deems necessary, just and proper.

**<u>JURY DEMANDED</u>**

The Plaintiff demands a trial by jury of all the issues of fact and damages.


Dated: November 14, 2018


*Michael Grinblat*
Michael Grinblat, Esq. (4159752)

Attorney for the Plaintiff
Law Offices of Michael Grinblat
817 Broadway, Fourth Floor
New York, NY 10003
Tel: (347) 796-0712
Fax: (212) 202-5130
Email: michael.grinblatesq@gmail.com